UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD SLONE,

    Plaintiff,                                           Civil Action No. 05-74009

v.                                                 HON.  BERNARD FRIEDMAN
                                                     U.S. District Judge
                                                     HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On August 8, 2002, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date of September 13, 2001 (Tr. 53-55).  Administrative Law Judge (ALJ) Douglas N. Jones held a hearing on August 9, 2004 in Flint, Michigan (Tr. 159). Plaintiff, unrepresented, testified (Tr. 168-186).  Ann Tremblay, a vocational expert also

testified (VE) (Tr. 186-193). On September 11, 2004, ALJ Jones found that although Plaintiff was unable to perform his past relevant work, he retained the ability to perform a limited range of unskilled work at the medium exertional level (Tr. 22). On September 2, 2005, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on October 19, 2005.

## BACKGROUND FACTS

Plaintiff, born June 13, 1950 was 54 when the ALJ issued his decision (Tr. 23, 53). He completed a GED in 1970 (Tr. 71). He worked previously as an electrician and maintenance worker (Tr. 66). Plaintiff alleges disability due to back, neck, leg, and hand problems (Tr. 65).

### A.     Plaintiff's Testimony

Plaintiff, unrepresented, testified that he lived with his girlfriend in a condominium in Fenton, Michigan (Tr. 166). Plaintiff reported that he joined the Navy after completing only tenth grade, but later received a GED (Tr. 167). Plaintiff, 6', estimated that he weighed 195 pounds (Tr. 168).

Plaintiff testified that he ceased work on September 13, 2001, but had attempted to resume his job duties the following spring (Tr. 168). He indicated that his attempt was unsuccessful, stating that he was unable to complete his job duties (Tr. 168). He reported that he drove no more than twice a month due to right hand and leg numbness as well as side effects from pain medication (Tr. 170). He testified that in the past year, he traveled by automobile with his girlfriend and sister to Kentucky (Tr. 170).

Plaintiff stated that he received medical care from an orthopedic physician as well as his primary care doctor (Tr. 171). He testified that although he regularly took both Flexeril and Lorcet, he had declined to take them before the hearing, stating that the medications "incapacitate[d]" him (Tr. 172). He reported that when the effects of the pain killers wore off he experienced trouble sleeping, adding that he had declined his physician's offer of an Oxycontin prescription due to his concern that the medication was habit-forming (Tr. 173).

Plaintiff testified that his membership in the electricians' union had lapsed in the early 1990s when he moved to Kentucky to be closer to his son, but that he had worked intermittently as an electrician and maintenance man up until his disability date (Tr. 174). Plaintiff alleged that he could no longer stand or sit for long periods of time and experienced hand and finger numbness which prevented him from operating industrial machinery (Tr. 180). He stated that he could sit stand or walk for a maximum of 40 minutes (Tr. 181). He stated further that he continued to attempt to lift more than the 10 to 20 pound limit prescribed by his physician (Tr. 182). Plaintiff reported that he required the use of a cane on a regular basis (Tr. 182). He testified that he experienced Carpal Tunnel Syndrome ("CTS"), adding that he experienced only minor finger numbness until 2002 when that condition worsened (Tr. 183).

Plaintiff testified that he had been transported by ambulance to the hospital approximately five years before the hearing after experiencing paralysis due to a pinched back nerve (Tr. 183). He reported that he experienced a second episode of paralysis, stating that he was unable to move or speak until discovered by his girlfriend the next morning (Tr.

185).

Plaintiff disputed a consultive physician's June, 2004 finding that he retained the ability to sit, stand, and walk without limitation (Tr. 184 *referencing* 141-148). He ended his testimony by stating that he had experienced back problems for almost twenty years and that a 1994 automobile accident exacerbated his condition (Tr. 185). He testified that he was completely uninsured until 2001 or 2002, stating further that his present income of $141 per month was inadequate to pay for even the co-payments required by his current policy (Tr. 186).

### B.     Medical Evidence

### i. Treating Sources

In May, 1994, Michael A. Passidomo, M.D., noting that Plaintiff had been involved in a recent automobile accident, found that Plaintiff remained unable to return to his job as an electrician in the mines due to posttraumatic cervical and lumbosacral strain as well as left knee and elbow injuries (Tr. 106). He noted further that although an MRI showed mild disc herniation at L5-S1, an EMG demonstrated "minimal abnormalities at the left cervical paraspinal level" (Tr. 106). In July, 2000, Plaintiff reported to Robert M. Ricketts, M.D., that he experienced numbness in his right hand along with a stiff neck upon awakening (Tr. 115). Imaging studies performed the same month showed "mild cervical radiculopathy" (Tr. 117). Examination notes from the same period indicate that Plaintiff did not experience atrophy (Tr. 115). In November, 2000, Theodore C. delaCruz, M.D., performed a neurosurgical evaluation of Plaintiff, noting that MRI studies showed "bulging discs at C5-6 and C6-7" (Tr.

108). Advising against surgery, Dr. DelaCruz recommended physical therapy, a soft cervical collar, lifting restrictions of 10 pounds, and "routine neck restrictions" for two months (Tr. 111-112).

In January 2002, treaters at McLaren Ambulatory Care Center gave Plaintiff a Flexeril prescription for back pain (Tr. 124). Imagining studies performed the same month showed mild scoliosis of the lumbar spine along with disc space narrowing at L5-S1 (Tr. 126). Mild anterior osteophytic spurring was noted at L3-4 and L5-S1 (Tr. 126).

In March, 2002 Mark A. Mills M.D., performed a pain management consultation, noting that Plaintiff complained of "moderate to severe burning, aching[,] sharp pain" since his 1994 accident (Tr. 136). Plaintiff also reported a history of migraine headaches (Tr. 136). Examination notes by Dr. Mills the following month indicate that an "[u]pper extremity examination was unremarkable" with a full range of motion in the lower extremities (Tr. 135).

In August, 2003, Plaintiff told David A. Fernandez, M.D., F.A.C.S. that recent epidural steroid injections had worsened his condition (Tr. 154). Fernandez noted that recent imaging studies showed significant loss of disc height at L5-S1 (Tr. 156). He recommended non-operative management (Tr. 156). In September, 2003, Dr. Matthew Hettle, M.D., found that Plaintiff experienced degenerative disc disease and cervical radiculitis, noting that he refused his recommendation to take OxyContin (Tr. 153). He noted further that Plaintiff's current "insurance issues" most likely prevented him from the use of a TENS unit or use of a patch (Tr. 153). Dr. Hettle reported the absence of lower extremity atrophy (Tr. 153). In

January, 2004, Plaintiff reported to Dr. Hettle that back and right shoulder pain caused sleeping problems (Tr. 149). Dr. Hettle prescribed Elavil (Tr. 149).

### ii. Consultive Sources

In June, 2004, Richard J. Kovan, M.D., examined Plaintiff on behalf of the SSA (Tr. 141-144). Kovan reported that Plaintiff demonstrated "a normal gait pattern without an assistive device;" the ability to squat and come to a standing position; and "full lumbosacral spine flexibility with the exception of forward flexion," noting that he experienced discomfort only at the end of his range of motion (Tr. 142). Kovan observed further that Plaintiff demonstrated a full range of motion in his upper extremities, knees, and hips (Tr. 142).

The same day, Dr. Kovan completed an assessment of Plaintiff's work-related abilities, finding the absence of lifting, carrying, standing, walking, sitting, pushing, or pulling limitations (Tr. 146). The report found further that Plaintiff retained the ability to perform frequent climbing, balancing, kneeling, crouching, crawling, and stooping (Tr. 146). The report concluded that Plaintiff did not experience manipulative, visual, or environmental limitations (Tr. 147-148).

### C. Vocational Expert

VE Ann Tremblay, stating that her prior findings and hearing testimony were consistent with the information found in the Dictionary of Occupational Titles ("DOT"), classified Plaintiff's former work as skilled at the heavy exertional level (Tr. 96, 188). The ALJ posed the following question:

> "[I]f I were to ask you to assume a hypothetical individual of the Claimant's age which is currently 54 years old and education which includes high school equivalent grade and the work experience that you've indicated in Exhibit B6E [Tr. 96], who is able to perform medium work that involves no use of vibrating tools; frequent but not constant bending at the waist or knees or kneeling; occasional crawling; only occasional climbing of ladders; only occasional exposure to unprotected heights or intrinsically hazardous uncovered moving machinery – I think I mentioned vibrating tools already, but no vibrating tools; no forceful or sustained gripping or grasping; no constant repetitive wrist movements; and the ability to wear hearing protection or otherwise be protected from very loud noise and where there'd be no need for fine binaural hearing discrimination – binaural discrimination period – both ears. Would such a person be able to perform the Claimant's past work, either as he actually performed it, or as it generally exists in the national economy?"

(Tr. 189). The VE replied that such an individual could not perform Plaintiff's past work due to the requirement that he work at heights, climb, and perform some forceful gripping (Tr. 189). The VE testified that given the hypothetical limitations, such an individual possessed transferrable skills allowing him to perform electrical equipment repair at the medium and light levels of exertion (Tr. 189-190). The VE testified further that the individual could perform a number of unskilled jobs at the medium exertional level including positions as a equipment cleaner (3,500 jobs), laundry worker (3,000), and bus driver (5,300), as well as the light exertional jobs of machine operator (10,000), messenger (3,800), and order clerk (4,100) (Tr. 190-191). She added that if the above positions included a sit/stand option, the electrical repair and messenger positions would be eliminated and the machine operator position would be halved by 50 percent (Tr. 191). In response to Plaintiff's comment that his medications would render machinery operation hazardous, the VE noted that even if the hypothetical individual were unable to process detailed instructions

or concentrate for extended periods he could perform unskilled work at the medium exertional level (Tr. 193).

### D. The ALJ's Decision

ALJ Jones found that although Plaintiff experienced the severe impairments of degenerative disc disease of the lumbar spine; mild bilateral carpal tunnel syndrome; myofascial pain syndrome; hypertension; and a left-sided hearing loss, none was severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (Tr. 20). The ALJ found that Plaintiff retained the following residual functional capacity (RFC) to perform medium exertional work including:

> "Work that involves only occasional (up to 33%) bending at the waist, frequent, but not constant (up to 66%) bending at the knees, frequent, but not constant kneeling, only occasional crawling, occasional climbing ladders, occasional exposure to unprotected heights or hazardous machinery, occasional driving, no forceful or sustained gripping or grasping, no constant repetitive wrist movements, no use of vibrating hand tools, and no very loud noise and no fine binaural discrimination, no detailed instruction and no extended periods of concentration"

(Tr. 20). Adopting the VE's job findings, he determined that Plaintiff could perform the unskilled jobs of equipment cleaner (3,500 jobs) and laundry worker (3,000) at the medium exertional level[1] (Tr. 21). The ALJ supported his rejection of Plaintiff's allegations of disability by citing his "lack of more aggressive treatment" along with his ordinary activities such as "performing household chores, visiting family and friends, eating out, attending a

---

[1] The job numbers represent existing job positions in the lower peninsula of Michigan (Tr. 21).

-8-

Domestic Violence class, going on road trips, fishing, watching television and reading" (Tr. 20). He noted that Plaintiff's impairments had not "required surgical intervention or hospitalization, noting that aggressive treatment was "not planned or recommended" (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### **Hypothetical Question**

Plaintiff contends that the ALJ's hypothetical question did not accurately portray his impairments, arguing that his standing and walking limitations resulting from lower back problems were improperly omitted. *Plaintiff's Brief* at 11. He maintains that his lower back pathology stands supported by MRI and EMG testing along with his own testimony that he could no longer fulfill the demands of medium exertional work. *Id*. at 13. Plaintiff, 54 at

the time of the ALJ's decision, argues further that he is capable of only sedentary work, which mandates a finding of disability due to the fact that he is closely approaching advanced age. *Id.* at 13.

*Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987) sets forth the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." (internal citations omitted). *Id.* at 9. *See also Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question must be supported by record evidence. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

In this case, the hypothetical question does not form a basis for remand. The ALJ's decision to include only a portion of Plaintiff's allegations is supported by record evidence. *See Stanley, supra.* First, apparently out of an abundance of fairness to Plaintiff, the ALJ placed hypothetical limitations on work activities beyond those supported by the medical records. Although Dr. Kovan found that Plaintiff did not experience any lifting, standing, walking, or sitting limitations, the hypothetical question limited lifting to a medium exertional level (Tr. 146, 189). Likewise, although the consultive report found that Plaintiff could perform all postural activities listed in the assessment on a *frequent* basis, the

hypothetical limited Plaintiff to *occasional* crawling, climbing, and exposure to unprotected heights (Tr. 146, 189). In addition, the ALJ took into account side effects of Plaintiff's medication when amending the hypothetical question at the end of the hearing (Tr. 193).

Aside from the fact that substantial evidence drawn from the record supports the hypothetical question, Plaintiff's treating sources do not support greater limitations than those set out by the ALJ. Plaintiff cites Dr. delaCruz's November, 2000 opinion that his lifting should be limited to 10 pounds (Tr. 111). However, the same report indicates that the restrictions were to be observed for two months, rather than permanently (Tr. 111). Dr. Hettle's September, 2003 observation that Plaintiff did not exhibit lower extremity atrophy further supports the hypothetical question as well as the ALJ's ultimate conclusion that Plaintiff could perform medium exertional work[2] (Tr. 153).

For the same reasons, Plaintiff's argument that he is disabled due to an alleged

---

[2]Although not raised by his counsel, Plaintiff indicated that his access to medical care (and by implication adequate medical records for administrative review) was compromised by financial difficulties (Tr. 153, 186).

> "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."

SSR 96-7p at 7. However, despite Plaintiff's lack of resources, he appeared to seek and receive medical care on a regular basis, testifying that he drove to his doctor's appointments twice a month (Tr. 170). Further, his treating sources indicate that he did not require more aggressive treatment (Tr. 156). Thus, the ALJ had adequate medical records from which to draw his non-disability conclusion.

inability to perform anything but sedentary work fails.  20 CFR § 404.1563(d) states that "[i]f you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." A finding that a claimant closely approaching advanced age could perform only unskilled sedentary work would generally direct a finding of disabled. However, substantial evidence, drawn from Plaintiff's medical records and testimony, supports the ALJ's determination that he retained the capacity for a limited range of medium work.

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments. However, the overriding question in this appeal is whether the Commissioner's decision was supported by substantial evidence.  Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative level. The fact that I might find differently upon *de novo* review is of no import.  Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated:  October 2, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 2, 2006.

S/Gina Wilson

Judicial Assistant

-15-