UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD SLONE,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No.
05-CV-74009-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION,
DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, and
REMANDING CASE FOR FURTHER PROCEEDINGS**

This matter is presently before the court on cross motions for summary judgment. Magistrate Judge R. Steven Whalen has submitted a report and recommendation in which he recommends that the court grant defendant's motion and deny plaintiff's motion. Plaintiff has filed timely objections. Defendant has not responded to the objections.

The court reviews *de novo* those portions of the report and recommendation to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Having made such a review, the court shall reject the report and recommendation, deny both parties' motions, and remand the matter for further administrative proceedings.

The medical evidence in this matter is summarized in the ALJ's decision, the parties' summary judgment motions, and the report and recommendation, and it need not be recounted in detail here. In short, plaintiff alleges that he has been unable to work since September 13, 2001, due principally to pain in his back and neck, and numbness in his leg and hand (Tr. 65). He has been diagnosed with extradural defects at the C5-6 and C6-7 levels (Tr. 114), mild levoconvex scoliosis

of the lumbar spine and mild degenerative changes involving the lumbar spine (Tr. 126), myofascial pain syndrome, lumbar and cervical radiculopathy, and lumbar disc displacement (Tr. 116, 135, 153), and lumbar spondylosis, lumbar degenerative disc disease, and mechanical back pain (Tr. 156).  He takes the following prescription medications:  Lipitor, Eiphenhydramine, Enalapril, Cimetidine, Lamisil, Hydrocodn, Protonix, Amitriptyline, and Atenolol (Tr. 103).  At the time of the administrative hearing, plaintiff was 54 years old (Tr. 166).  He has a GED, and work experience as an electrician and machine maintenance man in the coal mining and automobile industries (Tr. 66, 167, 174-179).

Defendant has concluded that plaintiff is not disabled within the meaning of the Social Security Act because, although he cannot perform his past work, he has the residual functional capacity for a limited range of unskilled, medium level work (Tr. 22-23).  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence" is "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  In reviewing defendant's decision, the court may "not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984).  If the "decision is supported by substantial evidence it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

Defendant's decision in this matter is not supported by substantial evidence because

the hypothetical question to the vocational expert is flawed.[1]  The hypothetical question is flawed because (1) the question does not include, and the ALJ made no findings regarding, two medical factors which may well be significantly vocationally limiting, namely, the side-effects of plaintiff's many prescription medications and the numbness in his leg and hand; and (2) the record does not support the finding that, and it has been insufficiently developed as to whether, plaintiff is physically capable of performing medium level work.  As the Sixth Circuit has noted, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted).

---

[1]The ALJ asked the vocational expert

> to assume a hypothetical individual of the Claimant's age, which is currently 54 years old and education which includes high school equivalent grade and the work experience that you've indicated in Exhibit B6E, who is able to perform medium work that involves no use of vibrating tools; frequent but not constant bending at the waist or knees or kneeling; occasionally crawling; only occasional climbing of ladders; only occasional exposure to unprotected heights or intrinsically hazardous uncovered moving machinery . . . no forceful or sustained gripping or grasping; no constant repetitive wrist movements; and the ability to wear hearing protection or otherwise be protected from very loud noise and where there'd be no need for fine binaural hearing discrimination – binaural discrimination period – both ears.

(Tr. 188.)  The ALJ subsequently increased the limitations by asking the vocational expert "to assume that the hypothetical individual could only bend at the waist or knees or kneel occasionally and would never crawl or climb ladders" (Tr. 190).  He further added the need for a sit/stand option and "a requirement that there be no detailed instructions or no extended periods of concentration and I will define extended period as no more than 10 minutes being required to mentally understand and actively process a given task" (Tr. 191-192). In response to these questions, the vocational expert identified unskilled "equipment cleaner" and "laundry worker" jobs which such a person could perform (Tr. 190), and these are the jobs the ALJ found plaintiff capable of performing (Tr. 21).

At the outset it is important to note that plaintiff was not represented by counsel until sometime after his hearing before the ALJ. The ALJ did offer to adjourn the hearing so that plaintiff could retain counsel, but plaintiff elected to proceed *pro se* when the ALJ indicated that if plaintiff wanted a lawyer the hearing would be delayed for two to three months (Tr. 162).

In a non-adversarial proceeding such as this, especially when plaintiff is unrepresented, the ALJ has a "special duty" to fully and fairly develop the record. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). "To satisfy this special duty the administrative law judge must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' He must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* at 1052 (citations omitted).

In the present case, the ALJ failed to ensure that the record was fully and fairly developed regarding three critical issues: (1) the opinions of the treating physicians as to whether plaintiff is physically capable of doing medium level work; (2) the side-effects of plaintiff's various prescription medications; and (3) the severity of the numbness in plaintiff hand and leg.

Regarding the first point, the court notes that medium level work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 220.132(c).[2] In addition, the ability to do medium level work presupposes the

---

[2] 20 C.F.R. § 220.132 states:

> To determine the physical exertion requirements of work in the national economy, jobs are classified as "sedentary", "light", "medium", "heavy", and "very heavy." These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations the Board uses the following definitions:

4

ability to do light and sedentary work. *See id.* Light work, in turn, assumes the ability to do "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls. " 20 C.F.R. § 220.132(b). Therefore, for a person to be found capable of doing medium level work, he must be able to lift up to 50 pounds at a time, lift or carry up to 25 pounds frequently, walk, sit or stand "most of the time" throughout an eight-hour workday, and operate arm or leg controls by pushing or pulling them.

Where is the evidence in this record to support the ALJ's finding – implicit in his hypothetical question, which asked the vocational expert to assume the ability "to perform medium

---

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. If the claimant can do light work, the Board determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If the claimant can do medium work, the Board determines that he or she can also do sedentary and light work.

work" – that plaintiff has these physical capabilities? Plaintiff himself testified that his doctors have limited him to lifting 10 to 20 pounds and that he can sit, stand or walk for only 30 to 40 minutes (Tr. 181). The various notes and reports from plaintiff's treating physicians neither support nor contradict this testimony, as they do not in any way quantify plaintiff's lifting, sitting, standing and walking abilities. The ALJ easily could have, and certainly should have, contacted plaintiff's treating physicians and obtained their opinions on this critical question. *See* 20 C.F.R. § 404.1512(e).[3] The absence of this information creates a gaping hole in the record which makes it

---

[3] 20 C.F.R. § 1512 states:

> (e) *Recontacting medical sources. When the evidence we receive from your treating physician* or psychologist or other medical source *is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.*
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. *We will seek additional evidence or clarification from your medical source when* the report from your medical source contains a conflict or ambiguity that must be resolved, *the report does not contain all the necessary information*, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. *We may do this by requesting* copies of your medical source's records, a new report, or *a more detailed report from your medical source, including your treating source,* or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

(Emphasis added.)

6

impossible for a reasonable decisionmaker to reach any conclusions as to plaintiff's physical abilities. Without these factual underpinnings, there is no basis for the ALJ to ask the vocational expert to assume a hypothetical worker who possesses the ability to do medium level work.

The record does contain one medical report with specific findings regarding plaintiff's physical abilities. Dr. Richard Kovan, M.D., who examined plaintiff at defendant's request, found no "evidence of neurological or orthopedic impairment" except for "reduced sensation to pinprick in the median nerve distribution that could be indicative of underlying bilateral carpal tunnel syndrome" (Tr. 142). Dr. Kovan also filled out six pages of checklists (which were not submitted to the treating physicians) to indicate plaintiff's physical limitations (Tr. 143-48). Amazingly, Dr. Kovan found that the range of motion in every joint of plaintiff's body is completely normal (Tr. 143-44); that plaintiff's impairments have *no effect* on his ability to lift or carry weight, or to stand, walk, sit, push or pull (Tr. 145-46); that plaintiff can "frequently" climb, balance, kneel, crouch, crawl and stoop (Tr. 146); and that plaintiff's manipulative functions (reaching, handling, fingering, and feeling) are "unlimited" by his impairments and he can "constantly" do these things (Tr. 147).

While noting Dr. Kovan's report (Tr. 19), the ALJ apparently rejected it because he found plaintiff to have several impairments,[4] which he characterized as "collectively 'severe'" (Tr. 20), whereas Dr. Kovan found no impairments of any kind except reduced pinprick sensation. The

---

[4] The ALJ's decision states: "The medical evidence documents the presence of impairments best described as: degenerative disc disease of the lumbar spine; mild bilateral carpal tunnel syndrome, myofascial pain syndrom, hypertension; and a left sided hearing loss" (Tr. 20).

ALJ also found that plaintiff's impairments significantly limit his ability to work,[5] whereas Dr. Kovan found no limitations whatsoever.

Aside from Dr. Kovan's apparently rejected report, the record contains insufficient evidence to enable the ALJ to make a finding regarding plaintiff's residual functional capacity. Remand is required to correct this deficiency.

Remand is also required so that the record may be fully and fairly developed as to two other matters, namely, the side-effects of plaintiff's many prescription medications and the numbness in his hand and leg. At the hearing, the ALJ asked plaintiff if he was taking all of the medications listed in Exhibit B-10E (*see* Tr. 105). Plaintiff indicated that he does, but that on the day of the hearing he "didn't want to be *incoherent* by taking my Flexeril and my Lorcet because they kind of *incapacitate* me" (Tr. 172; emphasis supplied). Elsewhere in the record plaintiff described the side-effects as "droseness and uncordnation and a relaxed felling" [sic] (Tr. 79). Particularly in light of plaintiff's *pro se* status, the ALJ should have developed the record on this potentially important issue, both by questioning plaintiff about it at the hearing and by obtaining a

---

[5]The ALJ concluded that plaintiff can

> perform medium work that involves only occasional (up to 33%) bending at the waist, frequent, but not constant (up to 66%) bending at the knees, frequent, but not constant kneeling, only occasional crawling, occasional climbing ladders, occasional exposure to unprotected heights or hazardous machinery, occasional driving, no forceful or sustained gripping or grasping, no constant repetitive wrist movements, no use of vibrating hand tools, and no very loud noise and no fine binaural discrimination, no detailed instruction [sic] and no extended periods of concentration (20 CFR § 404.1567).

(Tr. 22, finding 7).

medical opinion, preferably from plaintiff's treating physicians, as to the nature and severity of the side-effects, if any, which can reasonably be expected from plaintiff's medications. After making a factual finding as to this issue, the vocational expert should have been questioned regarding its vocational significance.

The other issue as to which the record is inadequately developed concerns the numbness in plaintiff's hand and leg. Plaintiff testified that he has numbness in his right hand and right leg (Tr. 180). The medical records contain several references to this impairment (*see* Tr. 111, 115, 142, 152-53), but the severity is not quantified. The ALJ, in turn, made no findings regarding the existence or severity of this numbness, and he did not include any such findings in his hypothetical question to the vocational expert.[6]

On remand, the ALJ is to fully and fairly develop the record by, at a minimum, obtaining the opinions of plaintiff's treating physicians as to (1) plaintiff's ability to sit, stand, walk and lift; (2) the nature and severity of the side-effects of plaintiff's medications; and (3) the nature and severity of the numbness in plaintiff's right hand and leg. The ALJ is to make specific factual findings as to each of these issues and incorporate these findings into hypothetical questions to a vocational expert. Accordingly,

---

[6]The ALJ did include the following limitations in his hypothetical question: "[N]o use of vibrating tools; . . . no forceful or sustained gripping or grasping; no constant repetitive wrist movements" (Tr. 188). The ALJ does not explain whether these limitations were meant to address plaintiff's hand numbness. Even if these limitations were included for this reason, the problem discussed above is not solved. The ALJ's role is to make factual findings regarding plaintiff's residual functional capacity and other limitations, and it is the vocational expert's role to testify as to the vocational significance of these findings. In the present case, the ALJ did not quantify plaintiff's numbness or ask the vocational expert whether the jobs she identified could be performed by a person with such numbness.

IT IS ORDERED that the magistrate judge's report and recommendation is rejected.

IT IS FURTHER ORDERED that both parties' motions for summary judgment are denied.

IT IS FURTHER ORDERED that the matter is remanded to the Commissioner of Social Security for further proceedings as indicated above. This is a "sentence four" remand pursuant to 42 U.S.C. § 405(g).

```
                                        ___s/Bernard A. Friedman_____
                                        BERNARD A. FRIEDMAN
                                        CHIEF UNITED STATES DISTRICT JUDGE
```
Dated: December 12, 2006
       Detroit, Michigan


**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

**_____/s/ Patricia Foster Hommel_____
       Patricia Foster Hommel
   Secretary to Chief Judge Friedman**